**BERKSHIRE INTERNATIONAL CORPORATION**

v.

**Harold B. MARQUEZ, d/b/a Empresas Marquez and Jantzen, Inc.**

**Civ. A. No. 74–3259.**

United States District Court,
E. D. Pennsylvania.

Jan. 20, 1976.

James F. McMullan, Jr., Nicholas A. Leonard, Clark, Ladner, Fortenbaugh & Young, Philadelphia, Pa., for plaintiff.

David S. Shrager, Farage & Shrager, Philadelphia, Pa., for defendant.

## MEMORANDUM AND ORDER

BRODERICK, District Judge.

Presently before the Court is the motion of the plaintiff, Berkshire Interna-

tional Corporation (Berkshire), to enjoin the defendant herein, Harold B. Marquez, d/b/a Empresas Marquez (Marquez) from further prosecuting an action brought by Marquez in the United States District Court for the District of Puerto Rico captioned *Harold B. Marquez, d/b/a Empresas Marquez v. Berkshire International Corp. and/or Vanity Fair Corp*. The defendant Marquez has countered with a motion to transfer the venue of this action pursuant to the provisions of 28 U.S.C. § 1404(a) from this district to the United States District Court for the District of Puerto Rico. For the reasons stated herein, the court has determined that it must grant the plaintiff's motion to enjoin the prosecution of the action in the District Court for the District of Puerto Rico and deny the defendant's motion for a change of venue.

Berkshire is a Pennsylvania corporation with its principal place of business in Wyomissing, Pennsylvania. Berkshire is engaged in the manufacture, distribution and sale of women's hosiery products as well as other wearing apparel. The defendant, Marquez, is a citizen of Puerto Rico doing business as Empresas Marquez in Santurce, Puerto Rico. Marquez is an independent sales representative for various clothing manufacturers including Berkshire. Defendant and garnishee Jantzen, Inc., allegedly has in its possession money due Marquez as a result of commissions earned by him.

The action now before this Court was filed by the plaintiff on December 20, 1974. The plaintiff's complaint alleges that a written Agreement made at Berkshire's office in Wyomissing, Pennsylvania and effective July 1, 1972, appointed defendant Marquez as a sales representative and its sole and exclusive representative in the territory of Puerto Rico and the Virgin Islands. The plaintiff further alleges that under the terms of this written agreement, Marquez agreed: (1) to report to Berkshire each week concerning all goods removed by Marquez from the stock consigned to him from Berkshire; (2) to make net payment to Berkshire for all goods sold by Marquez within sixty (60) days after such sale; (3) and to monitor the stock level and inventory of Berkshire's inventory. Berkshire contends in this action that Marquez has breached these obligations under the Agreement. The complaint also alleges that on November 20, 1974, pursuant to the terms of the written agreement, the plaintiff sent a notice of termination of the franchise agreement to Marquez. The plaintiff contends that under the terms of the agreement, upon notification by Berkshire of the termination of the agreement, Marquez was obligated to promptly return all goods consigned by Berkshire to Marquez, and that Marquez has failed to return $45,000 worth of consigned goods despite a demand by Berkshire that Marquez comply with the agreement and return the goods. The plaintiff seeks an order from this Court which will: (1) enjoin the defendant Marquez from disposing of the inventory consigned from Berkshire in the custody and control of Marquez or direct Marquez to pay to the plaintiff the reasonable value thereof; (2) enjoin the garnishee Jantzen from paying any debt to or for the account of the defendant Marquez; (3) direct the garnishee Jantzen to file with the Clerk of this Court a report setting forth all amounts owed by Jantzen to Marquez, all property of Marquez in Jantzen's possession and all property held by Jantzen as a fiduciary in which Marquez has an interest; and (4) direct the Marshal to attach all commissions, compensation or monies due Marquez from Jantzen. Berkshire also seeks judgment against Marquez for $75,-000, which represents the unpaid and overdue receivables of Berkshire merchandise sold by Marquez, together with interest and costs.

On February 4, 1975, defendant Marquez filed an action in the United States

District Court for the District of Puerto Rico captioned *Harold B. Marquez, d/b/a Empresas Marquez v. Berkshire International Corp. and/or Vanity Fair Corp.* This action brought by Marquez also alleges that on July 1, 1972 a written agreement [1] was entered into between Berkshire and Marquez and that sometime thereafter Vanity Fair, a defendant in the Puerto Rico action, assumed control of Berkshire. Marquez contends that after Vanity Fair assumed control of Berkshire the business relations between Bershire and Marquez deteriorated and that Berkshire proceeded to constantly breach the aforesaid contract, until on December 20, 1974, notice of termination was communicated to Marquez. The plaintiff further asserts that the termination was without just cause as required by the law of Puerto Rico.

The parties therefore agree that both the Puerto Rican action and the action before this Court are based on a claim that the opposing party breached the 1972 franchise agreement. Both parties further agree that the conflicting claims of breach are based upon the same set of facts and culminated in the notification of termination sent by Berkshire to Marquez on December 20, 1974. Finally, the parties agree that judicial economy would not be served by proceeding with both the Puerto Rican action and the action before this Court, which actions raise identical legal and factual issues. The conflict arises as to whether the action issues should be determined by this Court or the District Court for the District of Puerto Rico.

*Motion to Enjoin Prosecution of Actions in Puerto Rico.*

The United States Supreme Court has stated that the decision of whether a United States District Court should enjoin the prosecution of a second lawsuit involving identical parties and issues which is pending in another United States District Court rests in the sound discretion of the District Court. "Wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, does not counsel rigid mechanical solution of such problems." *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* 342 U.S. 180, 183, 72 S.Ct. 219, 221, 96 L.Ed. 200 (1952). Therefore, there is no rigid rule laid down by the Supreme Court as to whether a party should be enjoined from proceeding with a later filed lawsuit in another United States District Court, but the decision rests in the sound discretion of the trial court. *Martin v. Graybar Electric Company,* 266 F.2d 202 (7th Cir. 1959).

However, it has long been the policy of our Circuit Court that absent unusual circumstances the district court first obtaining jurisdiction of the parties and issues should "ordinarily proceed to adjudicate the controversy and should restrain the parties from seeking in the interim in a later suit in another district court to duplicate that adjudication." *Crosley Corporation v. Westinghouse Elec. & Mfg. Co.,* 130 F.2d 474, 475 (3d Cir. 1942), *cert. denied,* 317 U.S. 681, 63 S.Ct. 202, 87 L.Ed. 546 (1942); *Triangle Conduit & Cable Co. v. National Elec. P. Corp.,* 125 F.2d 1008 (3d Cir. 1942); *Crosley Corporation v. Hazeltine Corporation,* 122 F.2d 925 (3d Cir. 1941).[2] In the above cited cases, the

---

1. Marquez places some emphasis on the fact that a prior written agreement between the parties first established the business relationship between Marquez and Berkshire. However, both parties alleged in their complaints that it was the later 1972 agreement which the other breached.

2. In *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.,* the Supreme Court stated in a

footnote that the Court of Appeals decisions prior to *Kerotest* did not set forth any rigid rule as to enjoining the parties in subsequent actions. The Court indicated that these Courts, in exercising their discretion under the circumstances presented in their individual cases, had applied a proper test. 342 U.S. 180, 184, n. 3, 72 S.Ct. 219, 96 L.Ed. 200.

Third Circuit found that the trial court had abused its discretion by refusing to enjoin the parties from proceeding with the second lawsuit raising the same legal and factual issues.

The policy reasons underlying this general rule were succinctly stated by the Third Circuit in *Crosley Corporation v. Hazeltine Corporation*, 122 F.2d 925 (1941) as follows:

It is of obvious importance to all litigants to have a single determination of their controversy, rather than several decisions which if they conflict may require separate appeals to different circuit courts of appeals. No party has a vested right to have his cause tried by one judge rather than by another of equal jurisdiction. . . . The party who first brings a controversy into a court of competent jurisdiction for adjudication should, so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter. The economic waste involved in duplicating litigation is obvious. Equally important is its adverse effect upon the prompt and efficient administration of justice. In view of the constant increase in judicial business in the federal courts and the continual necessity of adding to the number of judges, at the expense of the taxpayers, public policy requires us to seek actively to avoid the waste of judicial time and energy. Courts already heavily burdened with litigation with which they must of necessity deal should therefore not be called upon to duplicate each other's work in cases involving the same issues and the same parties. 122 F.2d at 930.

In *Martin v. Graybar Electric Company*, 266 F.2d 202 (1959), the Seventh Circuit found that the district court had abused its discretion by refusing to enjoin the parties from proceeding with a second lawsuit involving the same parties and issues and stated:

Two simultaneously pending lawsuits involving identical issues and between the same parties, the parties being transposed and each prosecuting the other independently, is certainly anything but conducive to the orderly administration of justice. We believe it to be important that there be a single determination of a controversy between the same litigants and, therefore, a party who first brings an issue into a court of competent jurisdiction should be free from the vexation of concurrent litigation over the same subject matter, and an injunction should issue enjoining the prosecution of the second suit to prevent the economic waste involved in duplicating litigation which would have an adverse effect on the prompt and efficient administration of justice unless unusual circumstances warrant. As none such appears in this record, we agree with what would seem to be the established general rule that the party filing later in time should be enjoined from further prosecution of his suit. 266 F.2d at 204. (Citations omitted).

There are presented herein no extraordinary circumstances which would remove this case from the general rule that the court first obtaining jurisdiction of the parties and issues should proceed and should therefore restrain the parties from proceeding in a second lawsuit.[3] There is no evidence that the

3. The Second Circuit has also adopted the policy of the primacy of the first filed lawsuit. As stated in *Semmes Motors, Inc. v. Ford Motor Company*, 429 F.2d 1197 (2d Cir. 1970):

[T]he first suit should have priority, "absent the showing of balance of convenience in favor of the second action," . . . .

[T]he instances where the second court should go forward despite the protests of a party to the first action where full justice can be done, should be rare indeed. 429 F.2d at 1202–03.

See *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421 (2d Cir. 1965); *Remington Products Corp. v. American Aerovap, Inc.*, 192 F.2d 872 (2d Cir. 1951).

relief sought by the parties could be afforded them more expeditiously and effectively in the suit brought in the District Court for the District of Puerto Rico, nor is there any evidence that the action before this Court was not brought in good faith. *Crosley Corporation v. Westinghouse Elec. & Mfg. Co.*, 130 F.2d 474, 475, 476 (3d Cir. 1942). Furthermore, there is no evidence that forum shopping alone motivated Berkshire to bring its action in this Court. *Mattel, Inc. v. Louis Marx & Co.*, 353 F.2d 421, 424, n. 4 (2d Cir. 1965). This Court's determination to enjoin the parties from proceeding with the Puerto Rican action is bolstered by two additional considerations: (1) that the action in Puerto Rico should have been brought as a compulsory counterclaim, and (2) that the facts of this case are not appropriate for a change of venue under § 1404(a).

It is clear that the action brought by Marquez in Puerto Rico should have been filed as a mandatory counterclaim in this action under Rule 13(a) of the Federal Rules of Civil Procedure. Rule 13(a) reads as follows:

> A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action, or (2) the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

Under Rule 13(a), if Marquez's action in Puerto Rico "arises out of the transaction or occurrence that is the subject matter of" Berkshire's claim against Marquez in this court, then the action in Puerto Rico should have been brought as a compulsory counterclaim in this case. Whether a claim "arises out of the transaction or occurrence that is the subject matter of the opposing parties claim" has been given a broad realistic interpretation in the interest of avoiding a multiplicity of suits. *Moore v. New York Cotton Exchange*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926); 3 *Moore's Federal Practice* § 13.13 at 13–297 (2d ed. 1974). Indeed, the trend toward liberality has been approved by our Third Circuit in *Great Lakes Rubber Corporation v. Herbert Cooper Co.*, 286 F.2d 631 (1961):

> We have indicated that a counterclaim is compulsory if it bears a "logical relationship" to an opposing party's claim. The phrase "logical relationship" is given meaning by the purpose of the rule which it was designed to implement. Thus, a counterclaim is logically related to the opposing party's claim where separate trials on each of their respective claims would involve a substantial duplication of effort and time by the parties and the courts. Where multiple claims involve many of the same factual issues, or the same factual and legal issues, or where they are offshoots of the same basic controversy between the parties, fairness and considerations of convenience and of economy require that the counterclaimant be permitted to maintain his cause of action. Indeed the doctrine of *res judicata* compels the counterclaimant to assert his claim in the same suit for it would be barred if asserted separately, subsequently. 268 F.2d at 634. (Citations omitted).

The parties concede, as they must, that the instant litigation and the lawsuit filed by Marquez in Puerto Rico arose from the same transaction or occurrence. Therefore, the Puerto Rican action, which raises the identical legal and fac-

tual issues as this lawsuit, could have, and indeed should have, been brought as a compulsory counterclaim under Rule 13(a). Restraining the parties from proceeding with the action in Puerto Rico will therefore foster the policy of judicial economy enunciated in Rule 13(a) of the Federal Rules of Civil Procedure.

*Motion for a Change of Venue.*

The Court has also determined that this is the proper forum for litigating this action. As previously stated, the defendant Marquez has filed a motion for a change of venue pursuant to 28 U.S.C. § 1404(a). Marquez does not argue that both actions should proceed but concedes that judicial economy dictates that only one action go forward. The defendant has bottomed his opposition to the motion of the plaintiff to enjoin the parties from prosecuting the Puerto Rican action on the basis that § 1404(a) requires the transfer of this action to Puerto Rico where, presumably, the two actions would be consolidated. The Supreme Court in *Kerotest* noted that even where the prosecution of a second action is enjoined, a defendant joined in a *forum non conveniens* always has available upon an appropriate showing that relief provided in § 1404(a).[4] The availability of this relief, of course, makes unnecessary the filing of a separate action in the district to which the defendant desires to transfer the action.[5]

Section 1404(a) provides as follows:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

■ ■ It is not contested by either side that this action could have been brought in Puerto Rico. On a motion to transfer, however, a district court is vested with wide discretion in weighing all relevant factors to determine if, on balance, the action would proceed more expeditiously and the ends of justice would better be served if the transfer were effected. *Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 756 (3d Cir. 1973); *Ungrund v. Cunningham Brothers, Inc.,* 300 F.Supp. 270, 272 (S.D.Ill.1969). The burden, however, rests upon the moving party to establish that the initial forum is inconvenient. *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 25 (3d Cir. 1970), *cert. denied,* 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971); *Texas Gulf Sulphur Co. v. Ritter,* 371 F.2d 145, 147 (10th Cir. 1967).

The factors used to determine whether the balance of convenience weighs in favor of transferring this suit to the District Court for the District of Puerto Rico, or in favor of allowing plaintiff's choice of forum to stand undisturbed, have been recited many times, but the basic enunciation is ultimately traced to *Gulf Oil Corporation v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), where the Supreme Court discussed the principles of the *forum non conveniens* doctrine.

■ ■ The factors relevant to the instant case are: (1) plaintiff's choice of forum; (2) relative ease of access to

---

4. 343 U.S. 180, 186, 72 S.Ct. 219, 96 L.Ed. 200.

5. In *Polaroid Corporation v. Casselman,* 213 F.Supp. 379 (S.D.N.Y.1962), the Court stated the relationship between enjoining the prosecution of an action in another forum and § 1404(a) as follows:

> There can be no doubt, therefore, that in deciding whether or not to enjoin [the parties from prosecuting] an action in another forum, a court of equity should prefer the

forum which offers effective, convenient, inexpensive, and prompt relief to the one which portends the greater futility, inconvenience, waste and delay.

The same criteria govern the decision of whether to transfer the cause under Section 1404(a). As we shall soon show, a balance of the relevant factors strongly points to Boston as the more appropriate forum for this litigation. This brings us to the cross-motion for a change of venue. 213 F.Supp. at 382. (Citations and footnotes omitted).

sources of proof; (3) the cost of obtaining attendance of willing witnesses; and (4) practical considerations in making the trial easy, expeditious and inexpensive. *See also, Goodman v. Fleischmann,* 364 F.Supp. 1172 (E.D.Pa.1973). The following analysis, which sets forth the factors on which this court relies in denying this motion, as suggested in *Solomon v. Continental American Life Insurance Co.,* 472 F.2d 1043, 1048 (3d Cir. 1973), will show defendants have not met their burden of demonstrating the inconvenience of the chosen forum.

First, plaintiff's choice of forum is given great weight by the court. *Shutte v. Armco Steel Corp., supra.* As the Supreme Court stated in *Koster v. Lumbermen's Mut. Casualty Co.,* 330 U.S. 518, 524, 67 S.Ct. 828, 831, 91 L.Ed. 1067 (1947):

> Where there are only two parties to a dispute, there is good reason why it should be tried in the plaintiff's home forum if that has been his choice. He should not be deprived of the presumed advantages of his home jurisdiction except upon a clear showing of facts which either (1) establish such oppressiveness and vexation to a defendant as to be out of all proportion to plaintiff's convenience, which may be shown to be slight or nonexistent, or (2) make trial in the chosen forum inappropriate because of considerations affecting the court's own administrative and legal problems.

Second, the affidavits submitted by both Berkshire and Marquez have not established that there is greater access to sources of proof in Puerto Rico than in this district. It is undoubtedly true that some of the records of the defendant Marquez which may be necessary to establish the defendant's defense or claim are located in Puerto Rico at the defendant's place of business. However, it is equally obvious that many of the plaintiff's records which are relevant to this lawsuit are located in Pennsylvania. The Court cannot say that, based upon the evidence before it in connection with the motion to transfer venue, that the access to sources of proof militates in favor of either the plaintiff or the defendant.

Third, the affidavits submitted by both sides establish that while the defendant intends to call at trial many witnesses residing in Puerto Rico, the plaintiff intends to call witnesses on its behalf who are located in this district. Again, the relative availability of witnesses and the cost of their attendance does not militate in favor of the defendant. In connection with both the availability of proof and of witnesses in this action, the defendant has not carried its burden since granting the defendant's motion would at best only shift the inconvenience from the defendant to the plaintiff. *Rental Industry Services, Inc. v. Thrifty Rent-A-Car System, Inc.,* C.A. No. 74–3132 (E.D.Pa. May 13, 1975); *Atlantic Richfield Company v. Stearns-Roger, Inc.,* 379 F.Supp. 869 (E.D.Pa.1974); *Aquarium Pharmaceuticals, Inc. v. Industrial Press. & Pack., Inc.,* 358 F.Supp. 441, 446 (E.D. Pa.1973); *Toti v. Plymouth Bus. Co.,* 281 F.Supp. 897, 898 (S.D.N.Y.1968); *Schmidt v. American Flyers Airline Corp.,* 260 F.Supp. 813, 815 (S.D.N.Y. 1966). As stated in *Clay v. Overseas Carriers Corp.,* 61 F.R.D. 325 (E.D.Pa. 1973):

> The question remains, whether the choice of forum creates problems of convenience for the other party or parties and witnesses and for the interests of justice or of so substantial a nature that a transfer is appropriate; notwithstanding plaintiff's choice of forum. Transfer, to be appropriate, must ameliorate such problems while not merely shifting the burden of inconvenience to the plaintiff. 61 F.R.D. at 330.

The defendant argues strenuously that the Court should transfer this action to Puerto Rico because the parties contemplated that performance of the contract

was to be in Puerto Rico. The plaintiffs deny that such was the case. Indeed, the contract was signed in Pennsylvania and the goods were manufactured in Pennsylvania and shipped to Puerto Rico. While the goods were sold in Puerto Rico, the plaintiff would send its invoices from Pennsylvania and the defendant would mail his payments to Pennsylvania. In any event, the place of performance of the contract is of limited significance in connection with the selection of a convenient forum in which to try the lawsuit.

Finally, the defendant argues that by virtue of the agreement, the law of Puerto Rico will govern this dispute. The plaintiff argues that the agreement does not so provide. The Court is not now deciding which law will be applied to this case. It is, of course, not unusual for a United States district court to apply the law of another jurisdiction and little weight should be attached to the fact that foreign law controls the disposition of the case. *Monsanto Co. v. United Gas Pipe Line Co.,* 360 F.Supp. 1054, 1056 (D.C.D.C.1973); *Ocean Science & Engineering, Inc. v. International Geomarine Corp.,* 312 F.Supp. 825, 830, (D.Del.1970); *Breindel v. Levitt & Sons, Inc.,* 294 F.Supp. 42, 44 (E.D.N.Y.1968). In any event, in light of the totality of the facts before the Court, we do not believe that this consideration is sufficient to justify the transfer of this action. *Rental Industry Services, Inc. v. Thrifty Rent-A-Car System, Inc.,* C.A. No. 74–3132 (E.D.Pa. May 13, 1975).

Since this case is not an appropriate one for a change of venue pursuant to § 1404(a), and since the defendant's action in Puerto Rico should have been filed as a compulsory counterclaim in this forum, and since this court has found no extraordinary circumstances which would justify departing from the established rule that a federal court which first obtains jurisdiction of the parties and issues should enjoin the parties from prosecuting a subsequent action involving the same parties and issues, the Court has determined to grant the plaintiff's motion. It is not the intention or the desire of this court to encroach upon the jurisdiction of the United States district court in Puerto Rico, and we are reasonably certain that our fellow jurists in Puerto Rico will not in all probability become unduly disturbed by having one less case on their dockets. As Justice Cardoza said in *Steelman v. All Continent Corp.,* 301 U.S. 278, 57 S.Ct. 705, 81 L.Ed. 1085 (1937):

> What he seeks is an injunction directed to a suitor, and not to any court, upon the ground that the suitor is misusing a jurisdiction which by hypothesis exists, and converting it by such misuse to an instrument of wrong. . . . We are unable to yield assent to the statement of the court below that "the restraint of a proper party is legally tantamount to the restraint of the court itself." The reality of the distinction has illustration in a host of cases. 301 U.S. at 291, 57 S.Ct. at 710. (Citations omitted).

Accordingly, the following Order is entered:

## ORDER

And now, this 20th day of January, 1976, upon consideration of the motion of the plaintiff, Berkshire International Corporation, to enjoin the defendant Marquez from prosecuting his claim in the action captioned *Harold B. Marquez, d/b/a Empresas Marquez v. Berkshire International Corp. and/or Vanity Fair,* Civil Action No. 75–122, pending in the United States District Court for the District of Puerto Rico, it is hereby ordered that the motion is granted and the defendant is enjoined from prosecuting that action in Puerto Rico until further order of this Court.

It is further ordered, upon consideration of the motion of the defendant Marquez for a change of venue pursuant to 28 U.S.C. § 1404(a), that the motion is denied.